DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a grant of summary judgment by the Lucas County Court of Common Pleas to defendant-appellee, Toledo Collision-Toledo Mechanical, Inc. ("Toledo Collision"). Appellant, Patrick J. Bowes, asserts the following assignments of error:
 "Assignment of Error No. 1: Where an explicit commitment is made by the employer to reinstate the employee to a job by a date certain, and the employee fulfills the conditions to reinstatement, an implied contract is expressed."
 "Assignment of Error No. 2: It was error for the court to find the employer's statement that it would re-employ the worker, subject to the employee's fulfillment of certain conditions, did not constitute an enforceable promise for the purposes of summary judgment."
The facts of this case are derived from the pleadings, appellant's deposition and the exhibits to that deposition.[1]
Toledo Collision is a corporation employing eight or nine persons that is in the business of performing body repairs and the painting of large vehicles, such as trucks, truck tractors and mobile homes. Appellant began working as the sole sales representative for Toledo Collision, then a new business, in 1986. Appellant's working relationship with John Morava, the owner of Toledo Collision, was, at best, contentious. In his deposition, appellant, nevertheless, asserted that, throughout the years that he was employed by Toledo Collision, Morava repeatedly asked him to purchase the business.
On September 11, 1997, appellant suffered a myocardial infarction and, as a result, was required to undergo bypass surgery. On September 29, 1997, and at appellant's request, Morava sent a letter to appellant explaining the terms governing his return to work. The letter reads, in pertinent part:
 "* * *[P]rior to returning to work we must receive from your doctor or doctors a letter indicating that you are completely recovered
 and capable of operating in a high tension, fast paced environment. * * * Your doctor should specifically tell us that you are able to work the 40-60 hours per week that the job requires and that you are able to accommodate the stress of our business environment."
In the letter, Morava also granted appellant an unpaid ninety day leave of absence beginning on October 1, 1997, but required that certification of appellant's fitness for work be received within that ninety day period. If certification was timely received attesting that appellant was able to return to work by April 1, 1998, and appellant committed to a return to work by that date, the letter stated, "* * * we will hold the job open for your return not later than April 1, 1998."
On October 14, 1997, Morava sent appellant a second letter detailing specific concerns and objectives related to appellant's employment. Apparently, Morava was under the impression that appellant would gradually take over the total management of Toledo Collision. In concluding the letter, Morava informed appellant that the business "is beginning to run smoothly and it can be run by one individual [sic] selling included."
In October 1997, appellant applied for and obtained unemployment compensation. As required in order to receive unemployment benefits, appellant filed several applications for various jobs. When asked during his deposition whether he had any other reason for submitting the job applications, appellant replied that the time in which he was ready to go back to work was approaching "and just in case I didn't have a job at Toledo Collision, I was going to have to find something."
Morava and appellant met in December 1997 to discuss the possibility of appellant purchasing Toledo Collision. Appellant subsequently wrote Morava a letter unequivocally rejecting any such possibility.
On January 31, 1998, appellant informed Morava that he was returning to work on February 16, 1998. Morava, in a reply, told appellant that he had not received the necessary certification from appellant's doctor(s). In a note to Morava, appellant insisted that, on November 18, 1997, his physician, James F. Bingle, M.D., sent Toledo Collision a fax certifying that appellant could return to work as of December 8, 1997. A copy of Dr. Bingle's letter was attached to appellant's note. After receiving a fax of the certification from Bingle, Morava informed appellant, in writing, that he decided to eliminate appellant's position. Morava said that his primary reason for eliminating the position was the company's success during appellant's absence in operating under one manager. According to Morava, this led to the conclusion that "management of the company is a one person job." Morava also indicated that the employees and clients responded better when he performed the management duties than they had when appellant performed these duties.
Appellant commenced the instant action on April 7, 1998. He alleged that an implied contract of employment was created by the September 29, 1997 letter offering to hold appellant's position open until April 1, 1998, and that Toledo Collision breached that contract when Morava "refused to reinstate" appellant. Appellant also claimed that he was entitled to recover damages under the doctrine of promissory estoppel. Toledo Collision answered, and after taking appellant's deposition, filed a motion for summary judgment supported by that deposition and documents filed as exhibits thereto. Appellant filed a memorandum in opposition, and Toledo Collision was allowed to file a reply. On December 14, 1999, the trial court granted Toledo Collision's motion for summary judgment and dismissed this case.
In his first assignment of error, appellant contends that the trial court erred in granting Toledo Collision's summary judgment motion on his claim of an implied contract of employment. Appellant argues that the trial court impermissibly weighed the evidence in determining that the claimed "promise" in letters sent to appellant by Morava were insufficient "to establish" anything other than an at-will employment arrangement. Appellant further asserts that the trial court erred in finding that appellant failed to provide any consideration for the alleged promise of job security.
In order to grant a motion for summary judgment, a court must find that, construing the evidence most strongly in favor of the non-moving party, there is no genuine issue of material fact, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom that motion is made and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 65-66.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, the Ohio Supreme Court held that the moving party has the initial burden of informing the trial court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the non-moving party's claim. Once the moving party satisfies this initial burden, the non-moving party has a reciprocal burden to set forth specific facts showing there is a genuine issue for trial. While the issue posed by a motion for summary judgment does not involve the weighing of the supporting evidence, a court must determine whether sufficient evidence of the character and quality set forth in Civ.R. 56 was offered to show the existence or nonexistence of genuine issues of material fact. Sterling v. Penn Traffic Co. (1998), 129 Ohio App.3d 809,812; Allore v. Flower Hosp. (1997); 121 Ohio App.3d 229,234.
In examining the trial court's judgment entry, we conclude that the court set forth the proper standard for determining a motion for summary judgment and the correct elements needed to demonstrate an implied contract of employment. Unfortunately, the language used by the court in finding that appellant failed to offer evidence sufficient to create a question of material fact on the issues of the existence of an implied contract and a lack of consideration are couched in terms of the insufficiency of evidence to establish/support appellant's claims. Nevertheless, the court's judgment also reveals that the court did not impermissibly weigh the evidence or assess appellant's credibility in reaching its decision. That is, the judgment, when read as a whole, discloses that the court properly applied the standard for a motion for summary judgment by viewing the evidence offered in a light most favorable to appellant and concluded that the evidence offered by appellant was insufficient to create a question of material fact on the claim of implied contract. cf.McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236. Thus, despite the fact that the words used by the court in stating its finding may be inappropriate, consideration of the judgment entry as a whole leads to the conclusion that the use of this terminology is not reversible error.
As to the court's conclusion on the merits of Toledo Collision's motion for summary judgment, we find no error in that judgment. Because employment is presumed to be at-will, "the party to an implied contract of employment has a heavy burden. He must prove the existence of each element necessary to the formation of a contract." Penwell v. Amherst Hosp. (1992),84 Ohio App.3d 16, 21. Therefore, the party relying on an implied contract must demonstrate the existence of each element necessary to the formation of a contract including, inter alia, the exchange of bilateral promises, consideration and mutual assent. Gargaszv. Nordson Corp. (1990), 68 Ohio App.3d 149, 154.
Determination of an implied contract of employment relies on evidence of the history of relations between the employer and employee and the facts and circumstances surrounding the employment-at-will relationship. Mers v. Dispatch PrintingCo. (1985), 19 Ohio St.3d 100, 104. The facts and circumstances surrounding the employment include "the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question." Id. Other considerations include information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy. Wright v. Honda of Am. Mfg., Inc.
(1995), 73 Ohio St.3d 571, 574-575.
In the present case, it is undisputed that throughout the history of his employment relationship with Toledo Collision appellant was an at-will employee. Therefore, either party could terminate the employment relationship for any reason not contrary to law. Id. at 574. The alleged promises made to appellant after his heart bypass surgery were that, upon his complete recovery, he could, if he so desired, return to his position at Toledo Collision. As noted by the trial court the statement closest to a promise was "we will hold your job open for your return not later than April 1, 1998." Appellant acknowledged that this statement, as well as any other remarks made concerning appellant's return to work, did not affect his at-will employment status. Even in viewing this evidence in a light most favorable to appellant, one cannot infer from these statements that Toledo Collision promised to terminate appellant's employment only for cause or that Toledo Collision promised not to eliminate appellant's position. Additionally, allowing an employee to take a leave of absence does not create a question of fact as to whether that act gave rise to an implied employment contract. Gray-Jones v. Jones (Mar. 23, 2000), Franklin App. No. 98AP-1373, unreported. Because the evidence offered does not create a question of material fact as to the existence of a promise of job security, we need not address the issue of consideration, and find that the trial court did not err in granting Toledo Collision's motion for summary judgment on appellant's implied contract claim. Appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant asserts, in essence, that the trial court erred in granting Toledo Collision's motion for summary judgment on his promissory estoppel claim.
The doctrine of promissory estoppel does apply to and is binding upon oral at-will employment agreements. Mers v. DispatchPrinting Co., 19 Ohio St.3d at paragraph three of the syllabus. Promissory estoppel claims consist of three elements: promise, foreseeability, and detrimental reliance. Id. Thus, the employee must first point to a "representation" by the employer that could be reasonably interpreted as limiting the employer's ability to terminate the employment relationship. Penwell v. Amherst Hosp.,84 Ohio App.3d at 19. Second, the employee must show that he changed his position in reliance on that representation to his detriment. Id. Third, the employee must show that his reliance was justified and reasonable. Id.
Here, the trial court found, and we agree, that the statement offering to hold appellant's job open until April 1, 1998 was a "future opportunity." In other words, even in viewing that evidence in a light most favorable to appellant, a promise of continued, secure employment cannot be inferred. Thus, no genuine issue of material fact existed on the first element of promissory estoppel. Moreover, and assuming arguendo that a question of fact existed as to the representation in this case, appellant's own deposition testimony reveals no triable issue of fact exists on the second element. Appellant admitted that even after receiving the September 29, 1997 letter, he filed applications for other jobs "just in case" he did not have a job at Toledo Collision. He also testified that he knew that the offer to hold his job open did not mean that he could not be terminated from his employment. Accordingly, the undisputed evidence offered by appellant himself reveals that appellant did not detrimentally rely on a representation that the at-will relationship was somehow altered. For these reasons, appellant's second assignment of error is found not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant.
Peter M. Handwork, J., Richard W. Knepper, P.J.,George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] Appellant cites to Morava's deposition in his appellate brief. However, this deposition was never filed in the trial court nor is it part of the record on appeal. Furthermore, upon a review of the trial court's judgment entry, Morava's deposition was not considered by the trial court in reaching its decision. For these reasons, this court shall not and cannot consider any "facts" taken from the Morava deposition. See App.R. 9.